Good morning your honors and may it please the court, my name is Peter Kamakavivole on behalf of the appellant Susan Parker Lane Funkhouser and their two children. The appellant's complaint alleges that on July 25, 2012, agents of the Shenandoah Department of Social Services seized the children from their home without prior judicial approval, acting at the behest of a fellow investigator with Clark County Department of Social Services, who suspected that the children were victims of factitious disorder, even though he was not a mental health professional, did not consult with a mental health professional, looked at less than 20 pages of medical records, never interviewed the family, and was consulting with a former family employee who was embezzling from Parker and Funkhouser. The complaint further alleges that the children were seized without evidence that they were in any imminent danger and that their seizure was unlawful under Virginia's removal statute, which requires the defendants to have sought judicial approval as soon as possible after seizing the children. The complaint finally alleges that during a 34-day confinement in foster care, the Evans Home defendants at the behest and at the instructions of the DSS defendants interrogated the children in an attempt to elicit incriminating statements from them, while also demanding that they state that they loved the foster parents and telling the children that they would never be returned to their homes. Relying on a view of the facts starkly different from that of the complaint, the district court credited instead competing factual allegations from a unilateral self-serving affidavit that was attached to the defendant's motion to dismiss. This affidavit was neither attached to nor integral to the complaint, nor was it tested through the rigors of discovery. The district court, relying on the affidavit, then proceeded to resolve factual disputes as to the conduct of the defendants, which is a central question in this case, in the defendant's favor, which is impermissible even under this court's narrow exception. The complaint references the affidavit at a number of places, doesn't it? That is correct, Judge Askew. There are three allegations in the complaint that address the affidavit obliquely. Paragraph 53 of the complaint alleges that Utterbeck and or Judd prepared an affidavit. Paragraph 55 alleges that the affidavit was prepared without any input from a mental health professional. Paragraph 61 alleges that Weimer, Utterbeck, and Judd submitted their affidavit to the juvenile court on July 27th, based primarily, and that the affidavit was based primarily on allegations based on... But it is integral to your argument that the defendant didn't have probable cause without a prior court order. That's correct, Your Honor, it is. So... The complaint does allege that the defendants lack probable cause. The test for whether a document is integral to the complaint is whether, in the first instance, it's attached to the complaint. Here, the complaint did not attach to the affidavit. In addition, this court has held that specific reliance to quoted portions of the affidavit or a supporting document can make a supporting document integral to the complaint. What about the parts of the complaint, paragraph 35 and following, where a physician at Rockingham Memorial Hospital contacted the person at the Clark County Department of Social Services about this condition that they suspected, syndrome by proxy? Wasn't that part of what was in the affidavit? Yes, Your Honor. There are some circumstances where the affidavit, if it were to be accepted by this court, would corroborate allegations that are made in the complaint. The test for the Phillips exception, however, is not whether there is some overlap in facts between the affidavit or a supporting document and the complaint. The test in Phillips, and the court recognized in Phillips that the exception is narrow, is to prevent the plaintiffs from maintaining a fraud by misquoting documents that, if the court looked at in their full context, would be clear that the plaintiffs were misquoting. But isn't that, it seems to me that a big part of your claim against the department here was, look, they took this allegation and based primarily on that, they didn't check it, they didn't do any independent work, and based primarily on this allegation, they drafted this affidavit and they took it to get their order. So you've described the affidavit as being, and it's really integral to your case here, you've described the affidavit as being all about this one allegation. So I don't see why the judge can't look at the affidavit and discover, without crediting the truth of what's in the affidavit, there's actually a lot of other stuff in there too. So two responses, Judge Harris. First of all, you're correct, there are a lot of additional facts that are raised in the affidavit that have nothing to do with the complaint. Right, and all the district court did was look at those to see what DSS and the family judge were relying on when they decided there was probably a cause. Again, Judge Harris, that's correct. We don't dispute that the judge looked extensively at the factual allegations in the complaint, excuse me, in the affidavit. Our contention is that in looking at the affidavit, not only was it not integral in the sense that there are no quotations, the central purpose of the Phillips exception is to make sure that the plaintiffs are not misconstruing. That's a very artificial, that's a fairly artificial distinction. And in fact, I'm sort of having trouble, to be honest, with all the things that are going on in this case, why you think that that's a very valuable, that's a particularly compelling argument. So the reason why is, as I was about to say, in addition to the fact that the Phillips exception is narrow, that's the central purpose according to Phillips, this court has also made it clear in Zach v. Therapeutic Association that even if a document can be looked at under the Phillips exception, the court still draws disputed questions of fact, still has to draw disputed questions of fact in the non-movement's favor at this point in the proceedings. We're not at a stage in summary judgment where the affidavit has been tested. So what are the facts that you think are so crucial to this case that were misconstrued from the affidavit in favor of the defendants as opposed to the plaintiffs? There are a few. So first of all, the one that has been bandied around already is the allegation in the affidavit, and it's in the complaint as well, about the medical doctor, the emergency room doctor, Dr. Folsom, who apparently reported that he suspected that the children were victims of Munchausen syndrome by proxy. We contend, first and foremost, that that argument is only acceptable, you've only reached the conclusion that Dr. Folsom's conclusion was reasonable, if you reject allegations in the complaint and draw inferences in favor. I thought the point was that the allegation was made, not whether it's accurate or not, but simply looking at the information that was available and recognizing that that's the allegation that was made at a point in time when a decision was made. Judge Duncan, that's not the purpose for which the district court appropriated Dr. Folsom's report. The district court argued on page 6 that Dr. Folsom was clearly a physician who can readily and accurately determine whether a child is subject to imminent danger, based on his assessment of Munchausen syndrome by proxy. Paragraph 44 of the complaint alleges that factitious disorder is a complex mental health disorder that can only be diagnosed by a mental health professional. The complaint alleges in paragraph 45 and 46 that... Did you make that distinction? That is specifically alleged in the complaint, Your Honor, yes. Wait, wait, I don't even, what are you talking about on page 6? This is on page 6 of the district court's decision. And why is it that the district court said that you think it's wrong here? It says that clearly a physician who can readily and accurately determine whether a child is subject to imminent danger decided that he must contact someone within the Department of Social Services about these children. The assumption that's baked into the district court's decision in that statement is that Dr. Folsom was qualified to make this judgment. According to the allegations in the complaint, we specifically allege that Dr. Folsom... Is he a defendant here? He is not, Your Honor. Nor has he been subjected to discovery. So the district court is just quoting Jordan there. I really don't understand the district court to be making the factual finding about a diagnosis of Munchausen that you're suggesting. I mean, this is just a quote from one of our cases about physicians who can readily... That's correct, Your Honor. But the purpose for which that is quoted is because the district court is making an argument that Dr. Folsom was precisely that kind of physician. He's just saying that he's a mandated reporter. I think that was the distinction I was trying to get you to come to terms with. It does not appear, as I read it, that he was making a substantive determination. He was looking at what was presented when a determination... At the point in time when a determination was being made, whether it was substantively correct is another matter. This is the information that was available. And he was relying on a case which points... That points to the observations of mandated... Of a mandatory reporter. Your Honor, that... Just on its face. Your characterization draws an inference that I don't think is facially supported. Just to clarify, what inference would you like me to respond to? The inference that we draw. That the judge was relying on the accuracy of the emergency room physician's diagnosis. That this might be a case involving Munchausen's by proxy syndrome. Thank you, Your Honor. For the district court's decision to make any sense, the district court would have to conclude, and the court did in fact conclude, that the defendants had a reasonable basis to seize the children by relying on Dr. Folsom's assessment that they were victims of Munchausen's. That's the only inference, that's the only situation where the reference to Dr. Folsom's allegation makes any sense. All right, so tell us why that's unreasonable. So, again, the fundamental issue, Your Honor, is that the complaint clearly alleges that Dr. Folsom was not qualified to make a judgment. The complaint also alleges that rather than consulting with a mental health professional, the DSS defendants, even though Dr. Folsom made his statements two days before the seizure, the DSS defendants took no actions or steps to have the children evaluated by a mental health professional, have the parents evaluated by a mental health professional. So you said that the DSS folks who have a history with these, with this family, receives a report from a physician, a mandated reporter, who gives the view that this Munchausen by proxy syndrome may be prevalent, and that would create a danger for the children. So your view at that point is that the DSS folks, before they did anything else, or to convene, what, some medical conclave to do an examination? I'm having trouble grasping what you think is unreasonable here. Your Honor, I think the reason why you're having difficulty is that we dispute the claim, and the complaint disputes the idea that this allegation of Munchausen originated with Dr. Folsom. The complaint alleges that four months prior to Dr. Folsom's supposed report, which again, we haven't gone through the process of discovery. We don't know what the basis of his conclusion was. We don't know when he made his decision. We don't know whether he made it before or after talking to Defendant Austin. All that's off the table. But the complaint alleges that Defendant Austin suspected the family of Munchausen on his own as early as March 2012. But it's your complaint also that alleges that Folsom calls Austin, that Austin is not doing anything in this period, and then Folsom calls him, and then Austin calls the department, right? Yes, Your Honor. We allege that for reasons unknown, Dr. Folsom called Austin on July 23rd, and at that point in time, Austin conferred to Dr. Folsom, conveyed to Dr. Folsom, his suspicions that the family had factitious disorder. Again, the chain of custody, the chain of discussion is not clear from the facts because none of this has been subjected to discovery. But you're alleging that it starts with Folsom. I mean, that's an allegation in your complaint. Yes, we allege that the contact between DSS and Rockingham Memorial Hospital was initiated by Dr. Folsom. The complaint does not allege that Dr. Folsom was the one who brought up Munchausen. The complaint, in fact, alleges that Austin was the one who mentioned his suspicions of Munchausen and that he reached those suspicions four months earlier and, again, did not act on those suspicions at any point in time prior to that by bringing in a mental health professional to test whether his assertions were reasonable. Additionally, the complaint alleges that even if there was an allegation that was made and that it originated from Dr. Folsom about Munchausen, Munchausen syndrome by proxy manifests itself in two ways. Either there are fabricated illnesses that need to be treated. Let's step back for just a second. Let's assume that Dr. Folsom says this syndrome may be present. So Austin, he communicates that to the DSS folks in Shenandoah County. What is it that you say they were supposed to do at that point? Your Honor, the complaint alleges that the DSS defendants failed to follow up on the allegation on multiple levels. As we've stated, they failed even though the children were in a hospital. They failed to procure a secondary assessment from a mental health professional. They failed to review family's medical records. They failed to even interview the family themselves. Tell us what your basis is that says those actions were required. Your Honor, the question in this case is twofold. First of all, obviously, the actions of the case workers under the Fourth Amendment have to be reasonable. We contend that Jordan v. Jordan, which interpreted the emergency removal statute at issue in this case, held that prior to the removal of a child, there has to be at least some evidence that the children are in imminent danger if they were to be returned from their parents. The critical aspect of this case that's missing, as we argue in our brief, is any evidence, whether you look at the affidavit or whether you look at the complaint, there's a complete absence of any evidence that the parents were responsible for making their children sick. In order for there to be a finding or at least even a suspicion of Munchausen syndrome by proxy, this court in Wilder held there has to be at least some evidence of something that would constitute abuse. Nothing in the affidavit, nothing in the complaint, even remotely suggests that the parents are responsible for making their children sick and the children are not suffering from an illusory illness. They're clearly suffering from a diagnosed infection at the time they're seen. I'm out of time. If you have additional questions, otherwise, I'll reserve my time for rebuttal. Thank you. Thank you very much. May it please the court. Julia Judkins for Michael Austin. I have six minutes. I will address the claims as they relate to my client. I believe that the appellants here have waived any argument that the affidavit shouldn't be considered or the court pleadings not be considered. It was never raised in their opposition, the motion to dismiss. It was never argued that they shouldn't consider it. In fact, not only are the pleadings integral to the complaint, they are important for evaluating what the allegations... So you're saying this was not raised in the district court? No, sir, it was not. It wasn't raised in argument. It wasn't raised in the opposition. It was never raised until the appeal. In fact, I think it was raised on the second appeal as opposed to the first, but I may be mistaken about that. They've waived that, but regardless, for the very reason counsel has argued that the fourth circuit has acknowledged documents extrinsic to the complaint may be considered is relevant here. It's not for the truth of all of the matters set forth in the document, but there are matters set forth in the affidavit and the court's order. The court's actual order entered August 1st that directly refute, unequivocally refute the allegations in the complaint and constitute... This is the JDR? Yes, sir. The JDR order on August 1st where there's a two-and-a-half to three-hour hearing and evidence is presented, and counsel, who represented the same appellants here, represented the parents in the lower court and agreed to the detention continuing the child protective order, the custody order, for 30 days and all of the conditions on Exhibit A of that order agreed to a mental health evaluation that the parents had, the mental health, the mother, agreed that they would not do anything to harm the children. All of this was by agreement. If these documents are not considered by the court, then there truly is, maybe not a fraud on the court, but there truly is evidence that the allegations in the complaint are just outright false, substantive allegations, and that shouldn't be allowed. As Judge Urbanski said, you have to plead things that are consistent with reality. That goes to whether an emergency room doctor is qualified to contact a DSS worker and say he's got some suspicions about what's going on here, and those facts are in the affidavit. They don't ever allege that the facts, the things that were said, as opposed to whether the mother actually did this, that, or the other. They never allege in the complaint that none of that was said. You don't have an allegation that Mr. Austin fraudulently put information out there that he misrepresented anything, that he acted in bad faith, and it's obvious that he was contacted by the emergency room doctor because the case started in Clark County. But the case ended, per the allegations in the complaint, ended in Clark County. He no longer has the ability to run around and try to get a mental health evaluation. I don't see how in the world, even under this statutory scheme that Virginia has in place, that the DSS workers in this case had any authority to demand a mental health evaluation of the mother or the father before they sought an emergency removal. What authority did they have to do that? None. The law doesn't require it. It doesn't require it. What you have here is the doctor contacting my client. The doctor. Their whole claim against Mr. Austin is he set this in motion. He did not set anything in motion. At most, they allege that Mr. Austin didn't know enough about Munchausen syndrome or Munchausen by proxy to tell someone accurately what the diagnosis was. But the law in Virginia imposes on him the statutory duty when he suspects abuse to report that. So the doctor contacts him. They allege that. He then contacts DSS in Shenandoah. If he didn't, he's subject to criminal penalties for not doing so. Just as all these cases that have come before, Wolf, Jordan, all these cases. So the social worker is left in the position of I do nothing. I don't talk to the doctor. So he tells the doctor he thinks the children have Munchausen syndrome. He thinks that. He thinks the mother has. The mother. I'm sorry. You're right. He thinks the mother has Munchausen syndrome. That's not alleged to have been done in bad faith or based on any lies. It's based on he's not a person knowledgeable enough. That's all they say. So if you want to accept that, then he made a mistake. But under the law, he's not liable then for any constitutional violations. There's no constitutional violation when you have a merely negligent act. And that's all they've alleged. And so I argue and ask that the court affirm Judge Urbanski's dismissal of the claims against my client. Thank you. Mr. Bolling. May it please the court, my name is Jim Bolling. I represent the appellee social workers in Shenandoah County Department of Social Services. Jennifer Wimmer, Amanda Judd, and Brittany Auerbach. First, what did my social workers know? As a reasonable social worker or reasonably prudent social worker, I don't think it makes any difference for this case. What did they know? There's no factual allegation in this complaint that the Shenandoah social workers fabricated allegations or that they maliciously pursued the parents. In addition, there are no allegations in the complaint that the affidavit, which is key to our case, was not authentic. Here's what the social workers knew at the time they made the decision to remove the children. They knew that there was a doctor from the same hospital that was treating the children and he had made a social services complaint. Now that's in the complaint. In the affidavit, you'll see that they made a call to the hospital on July 23 and they talked to the social worker there and they were told at that time that the doctor had made a complaint to the social worker that he had concerns about Munchausen syndrome. Then they followed up that complaint on July 25 by getting the medical records and there it was. That's in the affidavit. Now Goins established a 2016 case from this court. Goins established that when there's a conflict between the complaint and an affidavit that is an integral part of the complaint, the affidavit controls. Again, there's no dispute in this case that the affidavit and the court documents attached to the motion to dismiss are not authentic. But there's no prior judicial order. There's no judicial order prior to the removal. There is no judicial order. It's an emergency proceeding. What's the standard for an emergency removal without prior judicial authorization? The standard is there's abuse or neglect, abuse and or neglect, which is reasonably likely to lead or result in severe or intermedial threat to the life or health of the child. And what are you quoting? What is your authority for that? The code authority for that is Virginia Code Section 16.1. And here, if you'll bear with me a second, Your Honor. The code authority is cited in the brief, Your Honor. But it is there. So what level of... I mean, the code says what the code says. But what level of surety are your clients, the DSS social workers, is there any standard established anywhere as to what level of surety they have when they make this assessment that there is an imminent threat to the welfare of the children? Well, it's a factual analysis, Your Honor. Not only did they have the doctors report to them, but they knew that the family came to the hospital and left against medical advice. They knew that the social worker at the hospital reported there were no medical reasons for their continued symptoms, but the mother wanted the children treated with IV antibiotics. They knew that the children had been treated by many different physicians. They had written records corroborating the hospital's verbal report. They had attempted a home visit, but the aunt refused to give information on the children's whereabouts. And they knew that the children were previously known to social services, and the parents had previously denied social services access to the children. So you consider all those factors, and then you consider the doctor's report, the canary in the mine, if you will, Your Honor. These social workers met that standard. Now, under the statutory rubric, they have to have a... Actually, just before we leave the standard, I mean, I guess part of this complaint is a Fourth Amendment allegation, right? And so do you have any sense of what the standard would be under the Fourth Amendment? Do you need probable cause? Do you need reasonable suspicion? And that was actually more my question. Yeah, Wildhour says it's something less than probable cause. Wildhour was a social worker investigation. That we submit as the standard in the Fourth Circuit at this point in time. You said you needed probable cause. You tell me if I'm wrong, but is there anything directly on point in the Fourth Circuit about what level... How we apply the Fourth Amendment to the removal of a child? Not directly on point, Your Honor. Wildhour says it's the closest, and that says it's something... It's a reasonable... A standard of reasonableness. It's not the full-blown due process. It's not the same as it is in a criminal context. That's exactly right, Your Honor. However, Goins established that you needed probable cause in the mental health situation when you take rights away from an adult. We submit, Your Honor, that the situation of a child is substantially different than the situation of an adult. So we seem to be in some agreement that there's no clarity when it comes to the actual legal standard in the Fourth Amendment context governing these facts. That's correct, Your Honor. That's my opinion. But I don't think it makes any difference whether you put a probable cause standard or you do the Wildhour, something a little less... Well, it matters, doesn't it, for purposes of a qualified immunity analysis? It does, Your Honor. But as to the qualified immunity, if Your Honor wants to discuss that, I just don't think there's... Whichever prong you go under, the first prong or the second prong, I don't think there's anything here that would not give these social workers qualified immunity in this case, Your Honor. The plaintiff raises numerous questions concerning state procedural due process violations. He pointed out to the clerk that no procedural due process clout was raised in the petition. I see my time is almost up. I appreciate your attention and thank you very much. Any other questions? No. Thank you. Mr. Hart? May it please the Court, Your Honor. I represent another group of defendants, what we'll call the Evans-Home defendants in the district court. That is the Henry and William Evans Home for Children and its employees, Ms. Reagan, the Powers, and the Rudolphs. My clients are named as defendants in counts three through six. Specifically, they are not mentioned as defendants in counts one and two, which relates to the alleged seizure of the children. Rather, they're named as defendants for holding the children, basically pursuant to what others have done. I wanted to clear two things up. As I read the briefs and as I heard... So were the Evans-Home defendants, were they holding the children pursuant to the JDR court order? They were for almost substantially the whole time, Your Honor. There was only one day that the DSS folks had brought the children to my clients. That was July 26th. But after that, July 27th was the ex parte order and then August 1st was the agreed order that was agreed to by not only the attorney for the parents, but also the guardian blighter for the children who agreed to that. So for the great substantial portion of the time, we were holding them pursuant to court orders that awarded custody of the children to the DSS. We had nothing to do with the seizure and it's not even alleged that we did and we're not named in these counts. I do want to clear up two things. So in theory, then, there's one day of a Fourth or Fourteenth Amendment claim that's not covered by a court order. That's right. The DSS had exercised its statutory powers and brought them to us. In fact, they first brought them to another foster home and then somehow they came to us on the 26th. But if I read the appellant's brief and if I heard counsel for the appellant argue, really the only kind of substantive allegation against the Evans home is that while they were in our home, while we were housing them and taking care of them, that we interrogated them or that we told them that they had to love us or something like that. And what I want to point out is that there is no allegation of a complaint. That even if that interrogation occurred, and we deny it, but even if that interrogation occurred, that that had anything to do with either the seizure of the children or with the continued housing of the children. We had nothing to do with those court procedures. So that's the first thing. And that's really the only claim they make against us is that we're somehow bad people because we interrogated the children. It has nothing to do with the claims against my clients. Second, and I just wanted to address this because the district court addressed the 14th Amendment claim in Count 4, which was the parents' claim, but examine that in its memorandum of opinion about the deliberate indifference to a known injury because there's some allegations of a complaint relating to the health of the children and whether they received medical care. I'll tell you, first of all, that is not the basis for the 14th Amendment claim in Count 4. There's no claim in that count that there was deliberate indifference to a known injury and that rose to a constitutional violation. So it really wasn't necessary for the district court to address that issue in its memorandum of opinion. Really, the 14th Amendment claim in Count 4 is the parents' claim, not the children's claim. And the medical issues that the complaint raises really only relate to Count 6, which was the state law negligence cause of action that the minor, Jay, who was later identified as Justice, claimed that he had injured his ankle and that he wasn't given proper medical care. That was all related to Count 6, which was the state law negligence claim. So I really don't know why the Evans home defendants were included in the appeal of the constitutional claims because, again, it's just Counts 3 and 4, which primarily were holding the children pursuant to what the J.D. and R. court and the DSS did. So finally, as to Jay's claim of negligence in Count 6, which the court considered when the appeal went back, the court dismissed that upon summary judgment, finding that the Evans home is clearly a charitable institution and that the son, Jay, had received the benefits of that institution. That finding is clear based upon the facts that they have agreed to in their memorandum. So that claim, I assume you would say, is covered by Ola versus YMCA or whatever that is. Right, Ola versus YMCA. And also the other case that we cite in our brief that says that applies also to the employees. So it implies to Ms. Reagan and the Powers and Rudolphs as well. They're entitled charitable immunity as well. So based upon that, we ask that the two district court orders, the one on the motion to dismiss on the constitutional claim and the false imprisonment claim and also the summary judgment order on the negligence case be affirmed and we do rely upon the arguments in our brief. Thank you. Thank you. May it please the court. With the court's permission, I'd like to begin with the discussion that the court had with Mr. Bolling about the appropriate standard for review. We argue in our briefs and there are authorities that we cite, Jordan being one that likens the standard that's created in the Virginia statute for emergency removal to the standard for pretrial detention of adults, which is, of course, probable cause. The point that I'd like to make, though, is that even if this court is uncertain as to what exact standard there is, qualified immunity is still inappropriate because even under this court's most liberal holding in Wildauer as well as in Wildauer, the government cannot seize a child even under Wildauer unless it has at least some evidence of abuse. And the complaint alleges that the evidence that the DSS defendants had when they seized the children did not amount to even some evidence of abuse. The complaint alleges, as I mentioned before, that in order to find Munchausen's sexual and bi-proxy, in order to allege that, in order to suspect it, there had to have been a suspicion that either the children's medical conditions were fabricated or the parents were intentionally making them sick. Even if one assumes that there was evidence before the DSS defendants when the children were seized on July 25th, the complaint alleges, and by the way, the affidavit admits, that by July 26th, the day before the DSS defendants went to the juvenile court, the DSS defendants had reports from the Evans Home defendants that the children were under medication, they were taking the medication, they no longer appeared to be sick, and the children had been diagnosed with an illness, an actual existing illness on July 25th. I don't understand. You seem to think that that matters, that the diagnosis of infection is dispositive on the abuse claim, as though both could not, as though they could not coexist. No, Your Honor, that's absolutely not what we're arguing. In our reply brief, we address that specific contention. We do not claim, as the district court and as the appellant seem to contend, that simply because you have a diagnosed illness, you can't be a victim of Munchausen's. Absolutely, you can't. But the only way you're a victim of Munchausen's, if you have a diagnosed illness, is if the parents are responsible for making you sick. We contend that's the evidence that the defendants needed. Well, the particular infection is caused by contact with human and animal feces. It is an infection that would not be unsusceptible to external administration. I just didn't quite understand your reliance on the diagnosis as being particularly dispositive with respect to Munchausen's. Absolutely, Your Honor, if I could clarify. So there is some indication in the record that, yes, you can. I say record. There is no record in this case. The complaint alleges, in paragraph 51, that the only way that you can intentionally inflict a person with a C. diff infection is if you have access to biohazard equipment. Whether the court finds that plausible or not, at this stage in the proceedings, until there's an opportunity to test that allegation through discovery, the court assumes that the allegations in the complaint as put are true. Well, it would also have to be the case that the defendants knew that, that defendants had some reason to believe that this infection was not susceptible to being externally administered. Does the complaint say that? Judge Duncan, I see my time is about to expire. I feel like I'm going to go a little bit longer than that. Thank you, Your Honor. Please respond to Judge Harris' question. Judge Harris, our contention is that the analysis is backwards. Rather than asking whether the defendants had evidence that it was not susceptible, what the court requires, and will there or what the court requires, and even in some evidence cases, is that there has to be at least some evidence that the DSS defendants have that this infection was intentionally caused. Because absent a finding of intentional causation or even suspicion, some evidence that would suggest an intentional infection, there's no basis reasonable. What would they need? Sorry, Your Honor. What would they need? We contend they had nothing. There's no indication. What would they need? Some evidence of motive on the part of the parents, for example, to make their children sick. But the problem with Munchausen's is that it's a manifestation of a disease. It's not a derivative of motive. I'm just having a little trouble following the thread of your response. I apologize, Judge Duncan. Please go ahead and respond, and I will not interrupt again. No, no, no, please. I'm at your disposal. Our argument is that the Virginia removal statute places the onus on the DSS defendants to demonstrate with at least some evidence that the children were in imminent danger of abuse. Because the abuse in this case is Munchausen syndrome by proxy, and because a positive diagnosis eliminates the possibility that the children were suffering from a fictitious illness, an illness that was not there, in order for an allegation of Munchausen's to be supported by at least some evidence, the DSS defendants were required under Virginia's removal statute to have at least some evidence that the parents intentionally made the children sick. We contend, and the complaint alleges repeatedly, that the parents did nothing but take constant steps to have their children reviewed by physicians, to be treated by physicians, to be observed under the oversight of physicians. There is no evidence to even remotely suggest that the parents intentionally inflicted this illness, and absolutely some evidence of that, an allegation of Munchausen's, was not enough to support removal under the emergency removal statute. One more question. Ms. Judkins indicated that her, in her argument, that your issue with respect to the affidavit was waived because it was not raised in the district court. Your Honor, my understanding is that we did not raise a technical challenge under the Phillips exception, because we had no idea at the time that the district court judge was going to rely on factual allegations in the affidavit and weigh them against the allegations in the complaint. We have to accept your characterization of what the district court did is correct. No, Your Honor, all I'm saying is that we didn't raise the specific Phillips exception argument, but it is undisputed, and the appellees admit this on page 16 of their brief, that even at that initial hearing, we very clearly contested that the allegations in the affidavit were true. But you never told the district court you cannot rely on the affidavit, and that it was, you never made the argument that you make here with respect to incorporation or reference in the complaint with regards to the affidavit. Your Honor, I can't answer that question specifically. I wasn't the attorney at that. There's nothing in the joint appendix that would contradict Ms. Judkins' argument. I am not aware of anything, Your Honor. All right, thank you. Thank you. Thank you. We will come down and group counsel.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris